IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN NUCKLES, | ) |
| Petitioner, | ) Case No. 13 C 4474 |
| v. | ) |
| | ) Judge Robert W. Gettleman |
| TOM SPILLER, Warden of Pinckneyville Correctional Center,[1] | ) |
| Respondent. | ) |

## MEMORANDUM OPINION AND ORDER

Petitioner John Nuckles filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, asserting that: (1) the evidence was not sufficient to establish his guilt beyond a reasonable doubt (Ground 1); (2) he was denied the right to present a complete defense when the trial court judge prohibited him from presenting evidence in surrebuttal (Ground Two); (3) his trial counsel provided ineffective assistance by failing to have certain scientific testing completed prior to trial (Ground Three); (4) his appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel on direct appeal (Ground Four); and (5) the state court erred in finding that his successive postconviction petition was barred by res judicata (Ground 5). For the reasons discussed below, the court denies the habeas petition and declines to issue a certificate of appealability.

---

[1] The court notes that according to a notice (doc. 21) filed by respondent, petitioner has been transferred to the Pinckneyville Correctional Center. Accordingly, Tom Spiller, the warden of the Pinckneyville Correctional Center, is the proper party respondent. The court also notes that respondent's answering brief in response to the petition for habeas corpus exceeds the page limit and fails to conform to Local Rule 7.1. The Illinois Attorney General and her staff are admonished that the rules of this court apply to them as they do to any litigant, pro se or counseled.

## BACKGROUND

On April 25, 2003, petitioner struck Phillip Bates on the left side of his head with a rubber mallet following a verbal altercation. Bates died a month later. The state's medical expert opined that Bates died as the result of a seizure caused by the head injuries he sustained a month earlier when hit by petitioner. Following a bench trial, petitioner was convicted of first degree murder and sentenced to 28 years' imprisonment.

On direct appeal, petitioner argued that: (1) the state failed to prove beyond a reasonable doubt that his striking Bates on the side of the head with a rubber mallet was the cause or a contributing cause of Bates' death; (2) the trial court erred in denying him the right to present surrebuttal evidence or, in the alternative, by denying his request to reopen his case to allow a neurologist to testify on behalf of the defense; and (3) his conviction should have be reduced to involuntary manslaughter because his acts were reckless instead of intentional. The appellate court affirmed his conviction on March 29, 2007. Petitioner subsequently filed a pro se petition for leave to appeal ("PLA") in the Illinois Supreme Court, contending that the trial court's refusal to allow him to present evidence in surrebuttal denied him the opportunity to present a complete defense. Petitioner's PLA was denied by the Illinois Supreme Court on September 26, 2007.

Thereafter, petitioner filed a pro se postconviction petition in the Circuit Court of Kane County, Illinois. Petitioner argued that: (1) the state failed to disclose certain evidence prior to trial, violating his constitutional rights; (2) the trial court failed to admonish him properly concerning the terms of his mandatory supervised release; and (3) trial counsel provided ineffective assistance by failing to: (a) object to or ask for the trial to be continued to perform a

pretrial investigation of the state's expert report; (b) request a hearing concerning the reliability of the state's expert's opinion linking the victim's death to petitioner hitting him on the head; (c) call a neurologist as an expert witness in the defense's case-in-chief; (d) conduct a meaningful pretrial investigation; (e) request that a blood test be conducted on the victim prior to trial; (f) retain or call as a part of the defense's case-in-chief a qualified medical expert; (g) present evidence of prior acts of violence committed by the victim against petitioner and others; and (h) call a witness in support of his self-defense claim. Petitioner also contended that appellate counsel was ineffective for not raising his ineffective assistance of trial counsel claim on direct appeal.

The circuit court denied petitioner's postconviction petition, which he appealed with the help of counsel. In his postconviction appeal, petitioner argued that he had been denied effective assistance of both trial and appellate counsel. The appellate court affirmed the dismissal of his postconviction petition, finding that petitioner had failed to provide evidentiary support for his ineffective assistance claim in violation of the Illinois Post-Conviction Hearing Act. Petitioner subsequently filed, with the help of counsel, a PLA in the Illinois Supreme Court, contending that the appellate court had erred in affirming the dismissal of his postconviction petition for failure to produce evidentiary support. Petitioner's PLA was denied on September 29, 2010.

In May 2011, petitioner filed a pro se successive postconviction petition in the Circuit Court of Kane County, Illinois, arguing again that his trial and appellate counsel were ineffective, and attaching purported evidentiary support for these claims. Citing petitioner's original postconviction petition based on ineffective assistance of counsel, the circuit court denied petitioner's successive postconviction petition as barred by res judicata. The appellate

3

court affirmed that the doctrine of res judicata controlled petitioner's successive postconviction petition. Petitioner subsequently filed a PLA with the Illinois Supreme Court, which was denied. The instant petition for habeas relief followed.

## DISCUSSION

**1.    Legal Standard**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254, provides the standard of review applied to federal habeas corpus petitions filed by persons in state custody. Under the AEDPA, a petitioner is entitled to a writ of habeas corpus for a non-defaulted claim if the challenged state court decision was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by [the] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000).

"'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'" Jackson v. Frank, 348 F.3d 658, 662 (7th Cir. 2003) (quoting Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003)). As the Supreme Court has recently reiterated, the state court's decision must be "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." White v. Wheeler, 136 S. Ct. 456, 460 (2015) (internal quotations omitted). Needless to say, the AEDPA "erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013).

**2.   Analysis**

    **A.   Grounds One, Three, and Four**

Respondent contends that three of petitioner's five claims are procedurally defaulted. Subsection 2254(b)(1) of the AEDPA provides that "a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless . . . the applicant has exhausted the remedies available in the courts of the State." In order to meet this exhaustion requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." See O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); see also Smith v. McKee, 598 F.3d 374, 382 (7th Cir. 2010). In Illinois, this process requires a petitioner to have presented his or her claim to both the Illinois Appellate Court and Illinois Supreme Court. O'Sullivan, 526 U.S. at 845; Smith, 598 F.3d at 382. Otherwise, the claim is procedurally defaulted and cannot be decided on the merits. Smith, 598 F.3d at 382. "Also, a federal court may not review a claim which was presented to the state courts but which was rejected on an independent and adequate state ground." Id. A federal court may entertain a procedurally defaulted claim only if the petitioner shows cause and prejudice, or that failure to review the claim will result in a fundamental miscarriage of justice. Id.; see also Coleman v. Thompson, 501 U.S. 722, 750 (1991).

Because petitioner failed to raise Ground One at each state court level, this court is precluded from reviewing the merits of the claim. Although petitioner challenged the sufficiency of the evidence upon which his conviction rested on direct appeal to the Illinois Appellate Court, petitioner abandoned this claim in his PLA to the Illinois Supreme Court, focusing instead on the trial court's refusal to allow him to present surrebuttal evidence. Contrary to petitioner's contentions, a review of his first PLA reveals that he did not ask the Illinois Supreme Court to review his conviction in its entirety, but instead limited his request for review to the surrebuttal issue.[2] Ex. E. Nor did he raise the sufficiency of the evidence as a part of his postconviction petition to the Circuit Court of Kane County. As a result of not raising his sufficiency of the evidence claim in both the Illinois Appellate and Supreme Court, or in his state post-conviction proceedings, petitioner's Ground One claim is procedurally defaulted on federal habeas review. See Rodriguez v. Scillia, 193 F.3d 913, 917 (7th Cir. 1999) ("If a prisoner fails to present his claims in a petition for discretionary review to a state court of last resort, those claims are procedurally defaulted.").

Similarly, Grounds Three and Four – alleging ineffective assistance of trial and appellate counsel – are also procedurally barred. Contrary to respondent's contention, petitioner did in fact raise the effectiveness of his appellate counsel as a claim in his postconviction petition before the circuit court. Specifically, petitioner asserted that his "Sixth amendment right to counsel was violated by [his] attorney on Direct Appeal for not including [the ineffective

---

[2] Specifically, petitioner stated in his PLA that the reason for granting review was "[t]o determine whether the Second District Appellate Court[']s decision, which affirmed the Kane Co. District Court[']s decision, to deny petitioner to rebut new matters brought in by the state in rebuttal, denied petitioner[']s right to a meaningful opportunity to present a complete defense." Ex. E at 10.

assistance of trial counsel] claims in the issues presented for review by the Appellate Court." Ex. S at C0209. Petitioner also raised Ground Four in his appeal to the Illinois Appellate Court.

Grounds Three and Four, however, are procedurally barred because the Illinois Appellate Court's decision was based on independent and adequate state law procedural grounds. See Smith, 598 F.3d at 382. The state appellate court held that petitioner's ineffective assistance of counsel claim was barred because he failed to attach evidentiary materials to his petition supporting his claim as required by the Illinois Post-Conviction Act, 725 ILCS 5/122-2. As discussed by the Illinois Appellate Court, petitioner's ineffective assistance of trial counsel claim is based on his lawyer's failure to have certain post-mortem tests performed on Bates' body to determine if he died as the result of a seizure and to retain a medical expert to testify to such. Ex. J at 7-8. However, the appellate court found that petitioner did not attached any affidavits or other documents to his petition indicating that post-mortem testing could have been done to reveal whether Bates had a seizure. Id. at 11. Accordingly, the appellate court held that petitioner had failed to meet the requirements of 725 ILCS 5/122-2, mandating that "[t]he petition shall have attached thereto affidavits, records, or other evidence supporting its allegations." Id. at 9, 11. The appellate court further found that petitioner's stated reasons for not having the documentary support attached – incarceration and lack of funds – did not excuse his noncompliance with the rule. Id. at 11-12. Because "the state court clearly and expressly relied on the petitioner's failure to meet a state procedural requirement as an independent basis for its disposition of the case," this court cannot review petitioner's ineffective assistance of counsel claims. Holmes v. Hardy, 608 F.3d 963, 967 (7th Cir. 2010).

    **B.**    **Ground Five**

Petitioner complains in his fifth ground for relief that the state court erred in holding that his successive postconviction petition was barred by res judicata. However, as respondent contends, petitioner's claim is not cognizable under § 2254. Because the doctrine of res judicata is a state procedural bar, and not a question of federal law, his claim is not related to a "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Consequently, the court will not consider Ground Five as a part of petitioner's habeas petition. See U.S. ex. rel. Baez v. Mathy, No. 05-C-6792, 2009 WL 88341, at *2 (N. D. Ill. Jan. 9, 2009) ("An improper application of *res judicata* . . . is an error of state law, which is not cognizable of federal collateral review.") (emphasis included).

C.     **Ground Two**

Because Grounds One, Three, and Four are procedurally defaulted (and petitioner has provided no basis for excusing this default) and Ground Five is not cognizable under § 2254, the court is limited to considering only the merits of petitioner's second ground for relief. In Ground Two, petitioner contends that he was denied his right to present a complete defense when the trial court denied his request to present a neurologist in surrebuttal.[3] "'Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense.'" Holmes v. South Carolina, 547 U.S.

---

[3] Petitioner also argues that the state failed to disclose prior to trial three treatises that the state's expert relied on to form his opinion, in violation of "his Sixth Amendment right of cross-examination and also violated his right to pre-trial discovery." However, as respondent points out, petitioner did not assert these claims "through one complete round of state-court review, either on direct appeal of his conviction or in his post-conviction proceedings, and thus [they] are now barred." Lewis, 390 F.3d at 1025.

319, 324 (2006) (quoting Crane v. Kentucky, 476 U.S. 683, 690 (1986)); see also Kubsch v. Neal, 800 F.3d 783, 795-96 (7th Cir. 2015) ("In a series of decisions led by" Chambers v. Mississippi, 410 U.S. 284 (1973), "the Supreme Court has held that the accused in a criminal case has a federal constitutional right to offer a defense."). "Meaningful adversarial testing of the State's case requires that the defendant not be prevented from raising an effective defense, which must include the right to present relevant, probative evidence." Montana v. Egelhoff, 518 U.S. 37, 63 (1996). Because the court finds that the appellate court's decision[4] is neither contrary to nor an unreasonable application of this clearly established federal law, petitioner is not entitled to habeas relief.

At petitioner's trial, Dr. Bryan Mitchell testified as an expert witness for the state. Dr. Mitchell, a forensic pathologist with the Kane County coroner's office, performed an autopsy on Bates' body on May 27, 2003. Dr. Mitchell testified that during the autopsy he found two injuries to the right side of Bates' brain, a subdural hematoma and a cortical contusion. According to Dr. Mitchell, when hit on one side of the head, the transmission of force can cause an injury on the opposite side of the head. Dr. Mitchell testified concerning several images that showed the injuries to the right side of Bates' brain. Image no. 2 depicted a small collection of blood trapped between the lining of Bates' skull and brain, known as a subdural hematoma. Image no. 5 showed a rusty colored lesion, known as a cortical contusion. Image no. 6 depicted a sample from a biopsy Dr. Mitchell performed of the cortical contusion. Dr. Mitchell testified

---

[4] The relevant decision, for purposes of determining whether state court proceedings in a case resulted in a decision that was contrary to or an unreasonable application of clearly established federal law, is the decision of the last state court to rule on the merits of the petitioner's claim. Charlton v. Davis, 439 F.3d 369, 374 (7th Cir. 2006).

9

that the biopsy sample revealed that both old and new blood was dissecting through the brain tissue. Dr. Mitchell also pointed to several open white spaces in the image, which indicated that there was swelling in the brain.

Dr. Mitchell testified that it was his opinion that the cortical contusion was a contributory cause of Bates' death. According to Dr. Mitchell, the new red blood cells around the contusion suggested that the injury had started to re-bleed. In addition, areas of hemosiderin, or iron caused by the old red blood cells, had irritated the brain cells. Dr. Mitchell opined that these factors could have caused Bates to have a seizure, leading to his death.

Dr. Michael Wolfson Kaufman, the senior attending pathologist at Evanston Hospital, testified as a defense expert. In reviewing the autopsy findings, Dr. Kaufman also found a subdural hematoma and a cortical contusion. However, in Dr. Kaufman's opinion, Bates' death was in no way related to these injuries. According to Dr. Kaufman, the cortical contusion was healing appropriately at the time of Bates' death and, had there been any new bleeding, it would have been reflected by bloody or blood-tinged cerebrospinal fluid, which was clear during Bates' autopsy.

Dr. Kaufman testified that it was his opinion that Bates died from alcohol withdrawal syndrome. According to Dr. Kaufman, it was undisputed that Bates was an alcoholic and that he had attempted to quit drinking following the incident with petitioner. Dr. Kaufman opined that the gastric contents in the pail beside the bed in which Bates died suggested that Bates had thrown-up shortly before his death. Dr. Kaufman suspected that when throwing-up, the gastric contents could have irritated Bates' vocal cords, prohibiting him from breathing. Dr. Kaufman also testified that heart disease could have contributed to Bates' death, as his heart was both

thickened and enlarged. It was also possible, according to Dr. Kaufman, that Bates died as the result of viral myocarditis, a diagnosis that would have required a biopsy of his heart, which was not done.

Following the close of petitioner's case, the state introduced the testimony of several rebuttal witnesses. Dr. Michael Iwanicki, the director of trauma services at Good Samaritan Hospital, testified that Bates had been transferred to Good Samaritan Hospital from Mercy Hospital on April 27, 2003, due to intracranial injuries that Mercy Hospital was not equipped to treat. At Good Samaritan Hospital, Bates complained of vomiting, but did not have any signs of delirium tremens, alcohol withdrawal, heart or respiratory disease, or viral myocarditis. Dr. Iwanicki testified that an April 28, 2003, CT scan showed that Bates had multiple contusions on the right side of his brain. According to Dr. Iwanicki, Bates was neurologically stable, his thought process was intact, and from the time of his admission to the hospital to his discharge he did not display any signs of a worsening head injury. Dr. Iwanicki testified that it was possible for a head injury to result in a seizure. Dr. Iwanicki also opined that the cerebrospinal fluid could be clear even if a person had a bleed or re-bleed in the brain if it were deeper in the brain, because the fluid does not bathe the entire brain.

The state also called Dr. Mitchell to testify again. He repeated his opinion that Bates had died as the result of a seizure caused by the cortical contusion in his brain. Dr. Mitchell further testified that contrary to Dr. Kaufman's testimony, there was no evidence of anything that would have caused Bates' vocal chords to spasm, obstructing his ability to breathe, or any evidence that Bates had a heart condition that caused his death. Dr. Mitchell also testified that during the autopsy he did not test for certain enzymes that ordinarily would have been present in the blood

following a seizure, because those substances break down after death and cannot be tested for post-mortem. During Dr. Mitchell's testimony he identified three texts "that are generally relied on in the medical community" for the proposition that a seizure can be the outcome of a cortical contusion.

On cross examination, Dr. Mitchell denied familiarity with Robert Fishman, an alleged authority on diseases of the nervous system and spinal fluid. Subsequently, petitioner's trial counsel asked the court to take judicial notice of one of Fishman's books on diseases of the nervous system, stating that he had spoken with several neurologists who recognized the book as an authority. The trial court refused to take judicial notice of the book as an authoritative source because he lacked knowledge of the medical textbook. Petitioner's trial lawyer then suggested that he would call a neurologist on surrebuttal, to which the trial court judge stated that petitioner did not have a right to surrebuttal.

Upon the close of the state's rebuttal, the trial court denied petitioner's request to introduce evidence in surrebuttal, noting that the state's rebuttal had not presented any new evidence. Petitioner's counsel then made an offer of proof, in which he read from several pages of Fishman's book and stated that "if called as a witness, a certain neurologist would testify that an example of the amino acids would be glutamate." Trial counsel further stated that he would "ask the neurologist as a witness whether or not if a seizure was diagnosed of having occurred with a witness, would this glutamate show up in the abnormal levels in the blood, and I expect his answer would be yes." Continuing his offer of proof, petitioner's counsel stated that he would expect "a board certified neurologist" called as a witness to testify that clear spinal fluid

may or may not "in and of itself indicate the presence of re-bleeding . . . . the only way of determining that would be microscopic examination."

Addressing petitioner's claim that the trial court erred in refusing to permit him to present surrebuttal evidence, the appellate court, citing People v. Perez, 209 Ill. App. 3d 457, 472 (1991), noted that "where the prosecution has introduced new material in its rebuttal case, a defendant must be allowed to present surrebuttal evidence in response to the new material." Ex. A at 15. The appellate court, however, concluded that petitioner's offer of proof failed to show how the evidence he wished to submit on surrebuttal would respond to any new material. According to the appellate court, petitioner's offer of proof was inadequate because "it did not even identify the name of the proposed witness (thereby suggesting that the defendant did not have a witness ready to testify), and it did not demonstrate that the proposed witness would respond to the new material introduced by the state." Id. The appellate court found that "[t]here was no suggestion that the proposed witness would criticize the sources relied upon by Dr. Mitchell, or contradict Dr. Mitchell's testimony that the chemical markers of a seizure cannot be tested for after death." Id. at 15-16. Nor did the offer of proof discuss the Fishman text or indicate that the proposed neurologist would recognize his book as authoritative. Id. at 16.

The appellate court found that "the sole piece of the State's rebuttal evidence that the defendant addressed in the offer of proof was Dr. Iwanicki's testimony that the [cerebrospinal fluid] can be clear despite the presence of re-bleeding." Id. However, the court concluded that "[s]uch testimony would at most amount to a dispute about a matter only tangentially related to the relevant issues at trial – whether Dr. Mitchell should have ordered additional tests of the

13

[cerebrospinal fluid]," – and that surrebuttal evidence must address material issues, not collateral matters. Id. Accordingly, the appellate court held that the trial court properly denied petitioner's request to present surrebuttal evidence. Id.

Following this analysis, the appellate court went on to consider whether the trial court's ruling violated petitioner's constitutional right to present a meaningful defense. The court, citing Holmes, found that petitioner "had wide latitude to introduce whatever evidence he deemed necessary to his defense in his case in chief." Ex. A at 17. Additionally, the appellate court found that petitioner was not "unfairly sandbagged after he had presented his own case" because "[t]he State did not introduce substantial new material in its rebuttal case." Id. The appellate court also noted that the majority of the evidence petitioner sought to address in surrebuttal – the possibility of testing for chemical changes in blood due to a seizure and the authoritativeness of a medical text – was information elicited from petitioner's counsel during cross examination of the state's rebuttal witnesses, and therefore could have been introduced in his case in chief. Id. Moreover, the appellate court held that the new information produced by the state in rebuttal was only marginally relevant and that petitioner's proffered surrebuttal evidence would have only minimally addressed it. Id. Consequently, the appellate court concluded that petitioner's constitutional right to present a complete defense had not been violated. Id.

As acknowledged by the appellate court, petitioner had a constitutional right to present a complete defense during his trial. However, neither petitioner nor this court has identified any Supreme Court case with "facts that are materially indistinguishable from" the present case. Williams v. Taylor, 529 U.S. 362, 406 (2000) (holding that a state-court decision will be contrary to the "Court's clearly established precedent if the state court confronts a set of facts

14

that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent."). The state court's adjudication of petitioner's constitutional right, therefore, could not be contrary to clearly established federal law as determined by the Supreme Court because no Supreme Court case "confront[s] 'the specific question presented by this case" – whether limiting a defendant's ability to present evidence in surrebuttal violates his right to present a complete defense. Woods v. Donald, 135 S. Ct. 1372, 1377 (2015) (quoting Lopez v. Smith, 135 S. Ct. 1, 4 (2014)).

Nor was the state appellate court's decision an unreasonable application of clearly established federal law. Petitioner's constitutional "right to present evidence [was] not limitless," and did "not permit [him] to introduce any and all evidence he believe[d] might work in his favor." Montana, 518 U.S. at 63-64. "[S]tate and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials." Holmes, 547 U.S. at 324 (internal quotations omitted). "[W]ell-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." Id. at 326. In considering a criminal defendant's constitutional right to present a complete defense, the Supreme Court has stated that the constitution permits judges to exclude evidence that is repetitive or only marginally relevant. Id. Here, where petitioner was not deprived of presenting any evidence during his case in chief, and was prevented only from challenging the state's expert on non-material points, this court cannot find that the appellate court's decision was an unreasonable application of clearly established federal law.

**3.      Certificate of Appealability**

15

A habeas petitioner is entitled to a certificate of appealability only if he has made a substantial showing that he was denied a constitutional right. 28 U.S.C. § 2253(c)(2); see Miller–El v. Cockrell, 537 U.S. 322, 327 (2003). To make that showing, a petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotations omitted). When the court has rejected the constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. Id. When the court denies a habeas petition on procedural grounds without reaching the petition's underlying constitutional claims, a petitioner must show that jurists could debate whether the court's procedural ruling was correct. Id.

Here, the court concludes that: (1) the appellate court's decision that petitioner's constitutional right to present a complete defense was not violated was neither contrary to, nor an unreasonable application of, Supreme Court precedent; (2) petitioner's ineffective assistance of counsel and sufficiency of the evidence claims are procedurally defaulted; and (3) petitioner's complaints concerning the application of res judicata to his successive postconviction petition are not cognizable. Reasonable jurists could not find otherwise. This court, therefore, declines to issue a certificate of appealability on any of petitioner's claims.

## **CONCLUSION**

For the foregoing reasons, the court denies the habeas petition and declines to issue a certificate of appealability.

**ENTER:** April 13, 2016

_____
**Robert W. Gettleman
United States District Judge**